IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-00518-BR

| | | |
|---|---|---|
| WILLIAM D. PARKER, JR., and DIANA L. PARKER, | ) | ORDER |
| | ) | |
| Appellants, | ) | |
| v. | ) | |
| | ) | |
| CONAN R. MCCLAIN, | ) | |
| | ) | |
| Appellee. | ) | |

This matter is before the court on the appeal of debtors William Parker, Jr. and Diana L. Parker (collectively the "Parkers" or "plaintiffs") from the bankruptcy court's 30 March 2017 order and judgment on Conan R. McClain's ("McClain") motion for judgment on partial findings under Rule 52(c), as explained by the court's memorandum opinion entered 18 May 2017. (Notice of Appeal, DE # 1, at 1.) Also before the court is the cross-appeal of McClain from the bankruptcy court's decisions: (1) "permitting and directing [the Parkers] to state new claims and defenses in their [o]bjection to [c]laim and [c]laim [n]o. [n]ine"; (2) overruling McClain's objections to the new claims and defenses asserted by the Parkers; (3) holding McClain was not in possession of the subject promissory note when it was lost; (4) "holding the [p]romissory [n]ote is not enforceable under N.C. Gen. Stat. § 25-3-309(b) because McClain failed to prove the contents of the note; and (5) "holding that the [p]romissory [n]ote attached to [his] proof of claim was not a true and accurate duplicate of the promissory note signed by William Parker."[1] (Joint Am. Statement of Issues, DE # 7-1, at 3.)

---

[1] Although the parties request oral argument, upon thorough review of the record and briefs in this case, the court determines that oral argument is unnecessary because the facts and arguments are adequately presented in the record and briefs, and oral argument would not significantly aid the court in reaching a decision.  See Fed. R. Bankr. P. 8019.

# I. BACKGROUND

In 1990, William Parker's father died and, among other things, left him ownership of a company called Gregory & Parker, Inc. ("G&P").  (Final Pretrial Order, DE # 7-7, at 234.)  In 1999, G&P hired William Russ, Mr. Parker's childhood friend, to manage a group of warehouse buildings in Raleigh, North Carolina, known as Seaboard Station.  (Id. at 235; Parkers' Br., DE # 43, at 9.)  At this time, Mr. Parker was president and sole shareholder of G&P, while his wife, Diana Parker, was the secretary and had sole check-writing authority.  (Final Pretrial Order, DE # 7-7, at 234; Parkers' Br., DE # 43, at 9.)  In August 2004, G&P formed Gregory & Parker-Seaboard, LLC ("G&P-Seaboard"), a wholly owned subsidiary.  (Final Pretrial Order, DE # 7-7, at 234; Parkers' Br., DE # 43, at 9.)  In November 2004, G&P Seaboard entered a Development and Services Agreement ("Development Contract") with Trammel Crow Company ("Trammel") to engage in a redevelopment project at Seaboard Station.  (5/18/17 Bankr. Order, DE # 7-8, at 239.)[2]  At that time, McClain was vice-president of Trammel and, in that capacity, was involved with the redevelopment of Seaboard Station.  (Id.)  "McClain was, at all times relevant to this action, licensed as a real estate broker by the North Carolina Real Estate Commission."  (Id. at 240.)

In November 2005, G&P Seaboard's corporate counsel sent Trammel written notification of various events which G&P Seaboard alleged amounted to default of the Development Contract.  (Id. at 239.)  In December 2005, McClain resigned from Trammel, and in February 2006, G&P Seaboard terminated the Development Contract with Trammel due to dissatisfaction with its performance.  (Id. at 240.)  Thereafter, McClain in his individual capacity assisted in the

---

[2] The bankruptcy court's order notes that the background facts provided therein are uncontested and/or stipulated. (See DE # 7-8, at 238 n.1.)

2

redevelopment of Seaboard Station.[3]  (Id.; see also Parkers' Br., DE # 43, at 10.)  McClain

helped pursue lease agreements and facilitated loans to the companies and to the Parkers.

(5/18/17 Bankr. Order, DE # 7-8, at 240.)  He was paid paychecks, commissions on some leases,

and sums out of loan proceeds.  (Id.)

      In 2008, Gregory & Parker – Seaboard II, LLC ("G&P Seaboard II") was formed to

develop an apartment site near Seaboard Station.  (Id. at 241.)  McClain entered a contract with

G&P Seaboard II to provide development services relating to the apartment project.  (Id.)

McClain's efforts in this endeavor included assisting with the procurement of loans, including

two loans from Georgia Capital signed by Mr. Parker personally.  (Parkers' Br., DE # 43, at 14.)

The feasibility of the apartment project depended on G&P Seaboard II obtaining ownership or

control of a contiguous piece of a property owned and/or controlled by the Triangle Transit

Authority.  (5/18/17 Bankr. Order, DE # 7-8, at 241.)  Ultimately, however, G&P Seaboard II did

not acquire such property, and the apartment project failed.  (Id. at 242.)

      On 22 February 2012, G&P and G&P-Seaboard (the "Companies") filed petitions for

relief under Chapter 11 of the United States Bankruptcy Code, which were later converted to

Chapter 7 cases.  (Final Pretrial Order, DE # 7-7, at 237.)  On 25 April 2012, the Parkers filed a

joint petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code.  (Id.)  McClain

filed two proofs of claim in the Parkers' bankruptcy case, relevant here is Claim 5-1 in the

amount of $1,498,903.14.  (Id. at 237–38.)  This claim was based on a promissory note ("the

Note") allegedly signed by Mr. Parker in favor of McClain.  The Note purportedly secured

McClain's interest in a stabilization fee owed based on the Trammel Development Contract.

---

[3] As noted by the bankruptcy court, the parties disagree on whether there was ever a written, fully-executed agreement with McClain to serve as developer or broker at Seaboard Station.  (5/18/17 Bankr. Order, DE # 7-8, at 240 n.3.)  McClain contends he provided services pursuant to a slip-sheeted version of the Development Contract after Trammell was fired.  (Id.;see also Parkers' Br., DE # 43, at 11.)

(5/18/17 Bankr. Order, DE # 7-8, at 255.)  On 24 March 2013, the Companies filed suit against McClain, which was resolved by order dated 11 June 2014 approving a settlement and compromise among the parties.  (5/18/17 Bankr. Order, DE # 7-8, at 243 (citing Gregory & Parker, Inc. v. McClain (In re Gregory & Parker, Inc.), Adv. Pro. No. 13-00052-8-SWH (Bankr. E.D.N.C. June 11, 2014).)

The Parkers, as individuals, initiated an adversary proceeding against McClain on 27 March 2013 asserting claims for: fraudulent transfers under the North Carolina Uniform Fraudulent Transfer Act; breach of fiduciary duty; constructive fraud; fraud; negligent misrepresentation; negligence; conversion; unfair or deceptive trade practices; disallowance of claim; setoff; and equitable subordination.  (Id.)  On 12 November 2014, McClain filed a motion for summary judgment which the court allowed in part and denied in part.  (Id. at 244.)  The court then conducted a bench trial on plaintiff's case-in-chief over thirteen non-consecutive days between February and August of 2016.  (7/3/17 Bankr. Order, DE # 7-8, at 293.)  At the conclusion of plaintiffs' evidence, McClain moved for judgment on partial findings, plaintiffs objected, and both sides submitted memoranda at the court's request.  (5/18/17 Bankr. Order, DE # 7-8, at 244.)

On 30 March 2017, the court allowed McClain's motion as to all claims other than the ninth cause of action.  (3/30/17 Bankr. Order, DE # 7-8, at 214.)  As to plaintiffs' ninth cause of action—disallowance of claim—the court denied McClain's motion "on the bases argued by plaintiffs (those being, generally, to disallow the claims on grounds of having been procured by fraud and other egregious conduct as alleged in the First Amended Complaint)," but did not "reach any ultimate determination as to the validity and amount of McClain's claims."  (Id.)  The court specifically recognized "[t]he burden is now on McClain to put forward evidence

4

supporting both the validity and calculation of his claim(s)." (Id. at 15.)  The bankruptcy court subsequently entered a memorandum opinion setting out its findings of fact and conclusions of law.  (5/18/17 Bankr. Order, DE # 7-8, at 239.)  Therein, the court explained the burden-shifting framework of the claims objection process, and stated:

> The court makes no official finding in this memorandum opinion, but it is readily apparent from plaintiffs' evidence that [they] will satisfy that burden in the claims objection process, after which the burden of proof will revert to McClain to prove, by a preponderance of the evidence, the validity and amount of his claim.

(Id. at 278.)  The court also noted that it was not making "any findings of fact with respect to whether the stabilization fee [on which the Note was based] was earned, properly calculated, or accurately reflected by the terms of the [Note]," because those questions were unrelated to the issue of whether McClain owed a fiduciary duty.  (Id. at 255 n.14; see Parkers Br., DE # 43, at 11 (explaining the Note was based on a stabilization fee McClain alleged he was entitled to).)  However, the court noted such findings are "material in the context of the Parkers' objection to McClain's claim(s), as to which factual findings would be premature because McClain has not yet put forward his own evidence in support of his claim." (Id. at 255 n.14.)

On 10 April 2017, plaintiffs filed a notice of appeal with regard to the bankruptcy court's ruling on the motion for partial judgment.  (See 7/3/17 Bankr. Order, DE # 7-8, at 294.)  Thereafter, McClain filed a motion requesting the bankruptcy court proceed with the adversary proceeding regarding the validity and amount of his claim while the appeal was pending.  (Id.)  The court agreed it was appropriate to proceed but "recognize[d] the need to focus the issues regarding the [o]bjection to [c]laims and [n]inth [c]laim." (Id.)  Therefore, the court directed the plaintiffs to file a "(i) a statement clarifying their [o]bjection to [c]laims and [c]laim [n]ine, or in the alternative, (ii) a new pre-trial order limited to the [o]bjection to [c]laims and [c]laim [n]ine[,]" and allowed McClain time to file a response or motion in limine thereto.  (Id. at 295.)

5

Thereafter, plaintiffs filed a statement clarifying their objection, and McClain filed an objection and two motions in limine to that statement. (See 11/21/17 Bankr. Order, DE # 7-9, at 83.) The court held a hearing on these matters on 24 October 2017. (Id. at 84.) On 21 November 2017, it held a motion in limine was not the proper mechanism to contest plaintiffs' clarification statement, but ordered briefing on:

> (1) whether and when a debtor may amend an objection to claim in order to assert new claims or raise new defenses and (2) whether the adversary proceeding complaint cause of action on the disallowance of claim may be amended pursuant to Federal Rule of Civil Procedure 15(b) under these facts and at this stage of litigation.

(Id. at 85–86.) After reviewing the briefs submitted on these issues, the court concluded "it [was] appropriate to permit the [d]ebtors to amend their objection to claim in the individual bankruptcy," and to allow plaintiffs to amend their complaint. (2/7/18 Bankr. Order, DE # 7-9, at 146.)

The bankruptcy court heard McClain's presentation of the evidence over five non-consecutive days in April and June of 2018. (See 11/4/19 Bankr. Order, DE # 7-8, at 313.) After the conclusion of his evidence and after allowing both sides to submit post-trial briefs, the bankruptcy court allowed plaintiffs' objection to Claim 5-1 filed by McClain, (9/26/19 Bankr. Order, DE # 7-8, at 306–07), and entered judgment for the Parkers on count nine of their amended complaint, (9/26/2019 Bankr. J., DE # 7-8, at 309). Thereafter, McClain appealed.

## II. DISCUSSION

When reviewing a decision of the bankruptcy court, this court sits as an appellate court and applies the same standards as would the Court of Appeals. Paramount Home Ent. Inc. v. Circuit City Stores, Inc., 445 B.R. 521, 526-27 (E.D. Va. 2010). Accordingly, the court reviews the factual findings of the bankruptcy court for clear error and its legal conclusions de novo. See

6

Mort Ranta v. Gorman, 721 F.3d 241, 250 (4th Cir. 2013). "A finding of fact is clearly erroneous when, 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" In re Mosko, 515 F.3d 319, 324 (4th Cir. 2008) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)). The parties agree with these standards of review, but, for purposes of his cross-appeal, McClain also "adds that rulings on procedural issues, including rulings under Fed. R. Civ. P. 15(b) and 16(e) are reviewed for abuse of discretion." (McClain's Br., DE # 48, at 14 (citing Koch v. Koch Indus., Inc., 203 F.3d 1202, 1216 (10th Cir. 2000) (citation omitted)).)

**A. Plaintiffs' appeal[4]**

*1. Breach of Fiduciary Duty Claim*

The Parkers claim the bankruptcy court erred by finding McClain did not owe them a fiduciary duty. (Parkers' Br., DE # 43, at 17–19.) They contend McClain owed them a fiduciary duty in law because he acted as their real estate broker. (Id. at 17.) They also allege McClain owed them a duty in fact because he had superior knowledge, was in a position of trust and confidence, and exercised control over business decisions. (Id. at 20.) The Parkers contend McClain breached these duties by inducing Mr. Parker to sign the Note agreeing to be personally responsible for a debt purportedly owed by G&P Seaboard. (Id. at 15.)

In response, McClain contends the Note signing did not arise out of any sort of brokerage relationship and thus that relationship cannot serve as the basis for a fiduciary duty. (DE # 48, at 27.) He also argues that he served as a developer for the Companies and not for the plaintiffs

---

[4] In addition to the claims discussed herein, in the joint amended statement of issues on appeal, plaintiffs contest the bankruptcy court's entry of judgment against them on their claims for fraud, negligent misrepresentation, negligence, and setoff. (See Joint Am. Statement of Issues, DE # 7-1, at 2.) Plaintiffs did not brief those issues, and therefore, they are considered abandoned. See White v. Haines, 190 F. App'x 282, 282 (4th Cir. 2006) (noting it is well-settled that contentions not raised in a party's brief are deemed abandoned (citation omitted)).

7

personally, so there was no special relationship with the Parkers. Finally, McClain argues he did not have sufficient dominion and control over the Parkers for a fiduciary duty to exist. (Id. at 30–33.) In reply, the Parkers acknowledge "McClain['s] argu[ment] that neither his role as broker nor his role as developer for [the Companies] resulted in a fiduciary relationship with the Parkers," and state, "[w]hile each of these may be true individually, it is the combined roles of broker to the Parkers individually, developer they worked with and entrusted their business with, and loan negotiator for the Parkers and their companies, as well as the Parkers lack of sophistication and complete trust in McClain that resulted in a fiduciary relationship."[5] (Parkers' Reply Br., DE # 50, at 13.)

As the bankruptcy court recognized:

> A fiduciary relationship exists where "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." [Dalton v. Camp, 548 S.E.2d 704, 707 (N.C. 2001)](quoting Abbitt v. Gregory, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931)) (internal quotations omitted). "Only when one party figuratively holds all the cards – all the financial power or technical information, for example – have North Carolina courts found that the special circumstance of fiduciary relationship has arisen." SNR Mgmt. Corp. v. Danube Partners 141, LLC, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008) (quoting Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 348 (4th Cir. 1998)) (internal quotations omitted). There are two types of fiduciary relationships recognized in North Carolina: (1) those arising from certain legal relationships, such as attorney and client or broker and client, and (2) those existing "in fact" due to "confidence reposed on one side, and [] resulting superiority and influence on the other." Danube Partners 141, LLC, 189 N.C. at 613, 659 S.E.2d at 451 (quoting Rhone-Poulenc Agro S.A. v. Monsanto Co., 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999)) (internal quotations omitted).

> . . . Courts have found that the existence of superior knowledge, trust and inexperience are insufficient to establish a fiduciary relationship. See Eastover Ridge, LLC v. Metric Constructors, Inc., 139 N.C. App. 360, 533 S.E.2d 827 (2000)

---

[5] In reply, the Parkers also argue McClain's role as a broker and developer "created a relationship of trust and confidence with the [them]." (Parkers' Reply, DE # 50, at 13–14.) Thus, they seemingly conflate their argument regarding a duty at law with their argument regarding duty in fact. To the extent their evidence could support either theory, this court—like the bankruptcy court—considers it.

(superior knowledge insufficient); see also River's Edge Pharm., LLC v. Gorbec Pharm. Servs., Inc., No. 1:10CV991, 2012 WL 1439133 (M.D.N.C. April 25, 2012) (trust and inexperience alone insufficient). Rather, for a fiduciary relationship to arise in fact, there must be "control and domination." [Monsanto], 73 F. Supp. 2d at 546. Relevant factors for determining the existence of a fiduciary relationship may include: "the degree of kinship between the parties, the disparity in age, health, mental condition and education and business experience between the parties; and the extent to which the 'servient' party entrusted the handling of its business affairs to the 'dominant' party and placed trust and confidence in it." Smith v. GMAC Mortg. Corp., No. 5:06CV125-V, 2007 WL 2593148, at *6 (W.D.N.C. Sept. 5, 2007) (quoting Monsanto, 73 F. Supp. 2d at 546 (incorporating factors identified by Illinois courts; court discussed both Illinois and North Carolina law, as parties agreed that both states require similar showings)) (internal quotations omitted).

(5/18/17 Bankr. Order, DE # 7-8, at 247 (quoting 8/10/15 Bankr. Order, DE # 7-6, at 748–49).)[6]

The evidence before the bankruptcy court revealed that McClain may have served as a real estate agent for the Parkers with regard to the purchase of properties in the first half of 2007, but the plaintiffs acknowledge the purchase of these "properties are not the primary focus of this case." (Parkers' Br., DE # 43, at 20 (citations omitted).)  Nonetheless, they argue McClain "owed the Parkers a fiduciary duty individually, specifically in connection with [these] transactions that occurred only months before the [Note] was dated." (Id. at 20–21.)  However, there is no evidence that McClain was acting as a broker or agent at the time the Note, on which their claim is based, was signed.   Thus, the Parkers failed to present evidence that McClain owed them, personally, a fiduciary duty as a result of a legal relationship *at the time* the Note was signed.  As such, the bankruptcy court did not err in finding a fiduciary duty in law did not exist.

In support of their argument that McClain owed them a duty in fact, plaintiffs rely on evidence which demonstrated that McClain's knowledge and development experience was

---

[6] Here, the parties seemingly do not dispute the law as explained by the bankruptcy court, nor do they directly dispute the factual findings, rather, plaintiffs argue the evidence—as described by the court—does not support the court's conclusion.  (See Parkers' Br., DE # 43, at 25.)

9

superior to the Parkers, that they trusted McClain and gave him access to their financial information, that he was authorized to negotiate for a loan on their behalf, and that they relied on him in signing that loan.  (Id. at 26–30 (citations omitted).)  The Parkers also recite testimony from Jeffrey Ellinger—who believed McClain owed a fiduciary duty—and Jeffrey Goebel (both attorneys for Parkers and their companies)—who testified regarding the relative sophistication of the Parkers and McClain—and Brett Mueller (Capital Associates), who testified that real estate brokers owe a fiduciary duty and that he had never seen a case with such lack of "checks and balances."  (Id. at 26–27, 28–29 (citations omitted).)

In reaching its conclusion, the bankruptcy court acknowledged this testimony.  (See, e.g., 5/18/17 Bankr. Order, DE # 7-8, at 262 ("McClain was demonstrably more educated, sophisticated, and experienced in real estate development than the Parkers[]"), 262 ("the Parkers trusted and relied upon McClain in much the same way and to the same extent that they trusted and relied upon the other professionals . . ., with the exception of Russ, in whom the Parkers reposed a greater degree of confidence"), 256 (reciting Mrs. Parker's testimony regarding actions McClain took and their trust in him), 259–61 (recounting Ellinger's, Goebel's, and Mueller's testimony consistent with the Parkers' description thereof).  The bankruptcy court concluded that "Mrs. Parker credibly testified that she had confidence in McClain, but [found] that this confidence was not greater in nature or degree than the trust and confidence she and Mr. Parker reposed in other professionals, nor should it have been."  (Id. at 259.)  This court agrees.

The bankruptcy court's conclusions that the "[p]laintiffs' evidence was insufficient to establish requirements essential to the existence of a fiduciary duty," in part because "the Parkers were not 'dominated and controlled' by McClain as a result of their trust and confidence," was not erroneous.  The evidence revealed that the Parkers routinely received advice from multiple

10

sources other than McClain, including their attorneys—Ellinger and Goebel—and William Russ, Mr. Parker's friend who assisted with his businesses.  (See, e.g., 3/17/16 Tr., DE # 17, at 36–37, 40 (Ellinger testifying that he advised and explained things to them on occasion); 8/3/16 Tr., DE # 23, at 19–20 (Goebel testifying that he explains closing documents to his clients line by line and that "[he] would not let [the Parkers] leave the room if [he] did not think they understood what they were getting into."); 5/18/17 Bankr. Order, DE # 7-8, at 256 (noting that Ellinger and Goebel testified that they advised the Parkers not to go through with the second Georgia Capital transaction), 257 (citing testimony of Mrs. Parker).)  The evidence further revealed that the Parkers placed immense trust in Russ, and did also rely on McClain, but they maintained ultimate authority over the companies and their assets, even if they preferred to be less involved with the day-to-day operations.  (See 3/16/16 Tr., DE # 16, at 176 (explaining that the Parkers trusted Russ and Russ trusted McClain); 3/17/16 Tr., DE # 17, at 24 (Ellinger noting Russ was his primary contact), 32 (testifying Mr. Parker was disengaged in business), 35 (Ellinger agreeing "Mr. and Mrs. Parker held all the authority for the companies to sign contracts and write checks.").)  Thus, it certainly cannot be said that McClain held "all of the cards."  As such, the bankruptcy court did not err in finding McClain did not owe the Parkers a fiduciary duty in fact.

### 2. Constructive Fraud Claim

Plaintiffs argue "[t]he constructive fraud claim must be reversed for the same reasons that the breach of fiduciary duty claim should be reversed."  (Parkers' Br., DE # 43, at 32.)  The Parkers again do not contest the law outlined by the bankruptcy court, or any specific finding made by the court, other than its conclusion that McClain did not commit constructive fraud.

11

"Constructive fraud is based upon a confidential or fiduciary relationship in which the defendant has taken advantage of his position of trust to injure the plaintiff." Baum v. Baum, No. 14-03283-5-DMW, 2016 Bankr. LEXIS 3465, at *42 (E.D.N.C. Bankr. Sept. 23, 2016) (citing Forbis v. Neal, 649 S.E.2d 382, 388 (N.C. 2007) (citations omitted)). Thus, to establish constructive fraud, a plaintiff must show: "the existence of circumstances (1) which created the relation of trust and confidence, and (2) which led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust[.]" Daley-Bishop v. Long & Foster Prop. Mgmt., No. 5:19-cv-270-FL, 2020 U.S. Dist. Lexis 126985, at *23 (E.D.N.C. June 3, 2020) (quoting Gen. Fed. Ins. Co. v. WFT, Inc., 837 S.E.2d 551, 556 (N.C. Ct. App. 2020)); see also Baum, 2016 Bankr. LEXIS 3465, at *42 (citation omitted). Proving constructive fraud also requires establishing that by their actions, the defendant benefited themself. Daley-Bishop, 2020 U.S. Dist. Lexis 126985, at *22; Baum, 2016 Bankr. LEXIS 3465, at *42.

Plaintiffs' claim for constructive fraud rests on largely the same evidence offered in support of their claim for breach of fiduciary duty. That is, they allege McClain had a position of trust and confidence with them, and "took advantage of Mr. Parker's trust by having him sign the Note and telling him it was for an interest in the Seaboard apartment project." (Parkers' Br., DE # 43, at 33, but see 3/16/16 Tr., DE # 16, at 23, 25 (McClain testifying that he did not tell Mr. Parker that the Note was for the sole purpose of securing an interest in the apartment project, and that he "walked through each paragraph of the agreement" with Mr. Parker).) For the reasons explained above, this court agrees with the bankruptcy court that the relationship between McClain and the Parkers as individuals is insufficient to satisfy the first element of constructive fraud. Additionally, the evidence does not support a finding that McClain took advantage of that

12

relationship to his benefit and their detriment.  As such, the bankruptcy court did not err in

entering judgment for McClain on this count.

### 3. Unfair and Deceptive Trade Practices ("UDTPA") Claim

First, plaintiffs contend McClain's breach of fiduciary duty and constructive fraud

constitute unfair or deceptive trade practices.  (Parkers' Br., DE # 43, at 34.)  Because McClain

did not owe a fiduciary duty to the Parkers and did not commit constructive fraud, as discussed

above, these bases will not be revisited.  Next, plaintiffs argue "McClain's actions in wrongfully

inducing Mr. Parker to sign the Note are unfair and deceptive in and of

themselves."  (Id.)

"A UDTPA claim requires (1) an unfair or deceptive act or practice; (2) in or affecting

commerce; which (3) proximately caused actual injury to the claimant or their business."  Nexus

Techs., Inc. v. Unlimited Power, Ltd., No. 1:19-cv-00009, 2020 U.S. Dist. LEXIS 221767, at

*22 (W.D.N.C. Nov. 25, 2020) (citing N.C. Gen. Stat. § 75-1.1).  A practice is unfair if it is

"immoral, unethical, oppressive, unscrupulous, or substantially injurious[.]"  Id. (citation

omitted).

> A trade practice is deceptive if it "'possesse[s] the tendency or capacity to mislead,
> or create[s] the likelihood of deception.'"  A party may be guilty of unfair or
> deceptive acts or practices when it engages in conduct that amounts to an
> "inequitable assertion of its power or position."

Compton v. Kirby, 577 S.E.2d 905, 917 (N.C. Ct. App. 2003) (citations omitted).

Plaintiffs contend McClain, in part, "took advantage of Mr. Parker when he had him sign

the Note, because Mr. Parker neither understood the Note nor the stabilization fee which was

supposedly its basis."  (Parkers' Br., DE # 43, at 35.)  They further allege that McClain had

never even seen a copy of the agreement which allegedly entitled him to a stabilization fee and

thus he could not prove the debt at all.  (Id.)  Thus, plaintiffs contend McClain improperly had

Mr. Parker accept liability for a debt that he could not prove.  (Id.)

Relevant to this issue, the bankruptcy court acknowledged that "Mr. Parker testified that

he was not consulted about business decisions and did not read documents presented to him for

signature," which would be brought to his home in Johnston County and "thrown in his face" for

signing.  (5/18/17 Bankr. Order, DE # 7-8, at 254.)  However, the bankruptcy court concluded

"[his] testimony was at times not credible."  (Id.)  It found

> there was an abundance of credible evidence from Ellinger, Goeble, and McClain
> that they thoroughly explained various things to him, yet Mr. Parker consistently
> appeared to be distant and uninvolved and wasn't inclined to engage with the
> information being provided to him on anything more than a superficial level.

(Id.)  Additionally, as discussed above, McClain testified that he "walked through each

paragraph of the agreement" with Mr. Parker.  (3/16/16 Tr., DE # 16, at 23.)

Without making a finding with regard to the legitimacy of the stabilization fee, the

bankruptcy court also found "ample evidence demonstrated that [McClain] did in fact perform,

for the Companies, the same general services required under the [Trammel Development

Contract], and that [he] was compensated by the Companies as provided for in the agreement."

(Id. at 255.)  Thus, despite the dispute regarding whether McClain undertook his responsibilities

pursuant to a "slip-sheeted" version of the agreement, the bankruptcy court concluded "[t]he

[Development Contract] was the basis for his assertion that he was owed a stabilization fee."

(Id.)

Although plaintiffs do not directly challenge these factual findings, the court finds they

were not clearly erroneous.  Applying the law to these facts, the evidence does not support a

finding that McClain engaged in conduct that was unfair or had the tendency to deceive.  The

bankruptcy court did not err in entering judgment in favor of McClain on this claim.

14

**B. McClain's Appeal**

*1. Plaintiffs' Clarification of Objection*

McClain takes issue with the bankruptcy court's order of 3 July 2017 directing plaintiffs to file a statement clarifying their objection or a new pretrial order, and with its later decision to overrule his objection to the new defenses asserted by the Parkers in that statement. (McClain's Br., DE # 48, at 12–13.) He claims the Parkers' clarification to the objection was actually an untimely amendment of the pleadings in violation of Federal Rules of Civil Procedure 15 and 16 as well as the doctrine of laches. (Id. at 44.) In response, the Parkers contend (1) there is no time limit in the bankruptcy rules for amending an objection to claim, (2) that McClain failed to meet his burden of proving his claim regardless of the amendment, (3) that failure to state a claim can be raised as a defense even at trial, and (4) the parties tried the issues by consent. (Parkers' Reply Br., DE # 50, at 15–16.)

The court reviews the trial court's decision to allow the amendment for abuse of discretion. See Alshehabi v. Hymans Seafood Co., No. 2:14-cv-02724-PMD, 2014 U.S. Dist. LEXIS 184673, at *8 (D.S.C. Dec. 1, 2014) ("The grant or denial of a motion for leave to amend a pleading is committed to the sound discretion of the trial court.") (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). (See also DE # 48, at 14 (stating abuse of discretion as the appropriate standard of review); DE # 50, at 21 (arguing the bankruptcy court did not abuse its discretion by allowing the amendment).)

Turning first to the 3 July 2017 order, the bankruptcy court recounted the procedural history of the case—McClain filed a proof of claim in the bankruptcy proceeding, plaintiffs objected and initiated an adversary proceeding alleging eleven claims of their own, the court granted judgment in favor of McClain on all claims except their disallowance claim (Count 9),

15

plaintiffs appealed that order—and deemed it appropriate to move forward with a hearing on the objection and disallowance claim.  (7/3/17 Bankr. Order, DE # 7-8, at 293–94.)  However, the court "recognize[d] the need to focus the issues regarding the [objection and Count 9]."  (Id. at 294.)  As such, it allowed McClain's motion to proceed despite the Parkers appeal but ordered the Parkers to file "(i) a statement clarifying their Objection to Claims and Claim Nine, or in the alternative, (ii) a new pre-trial order limited to the Objection to Claims and Claim Nine."  (Id. at 295.)  The court allowed McClain fourteen days thereafter to file a response and notified the parties of its intention to set a hearing on any issues that arise as a result of the clarification.  (Id.)  The bankruptcy court's decision to "focus the issues remaining for hearing" falls squarely within its discretion.  In directing the parties to do so, the bankruptcy court did not abuse that discretion and that order will not be disturbed by this court.  See Robinson v. Ford Motor Credit Co., No. 1:08cv1081, 2009 U.S. Dist. LEXIS 13764, at *3 (E.D. Va. 2009) ("Trial courts have broad discretion to manage their cases, including the authority to raise issues *sua sponte.*")

In response to the court's order, the Parkers filed a statement clarifying their objection to McClain's proof of claim and McClain filed motions in limine thereto.  After the matter was fully briefed, the bankruptcy court conducted a hearing and took the matter under advisement.  (See 11/21/17 Bankr. Order, DE # 7-9, at 84–85.)  The court acknowledged plaintiffs' clarifying statement asserted new defenses as to the validity of McClain's claim which were not specifically pled in their original objection.  (Id. at 85.)  However, the court denied McClain's motion in limine to exclude these defenses and instead ordered the parties to further brief whether and when an objection may be amended and whether Count 9 could be amended pursuant to Federal Rule of Civil Procedure Rule 15(b).  (Id. at 85–86.)  After reviewing those briefs, the court deemed it "appropriate to permit the [d]ebtors to amend their objection to claim

16

in the individual bankruptcy" and "to amend the complaint in the adversary proceeding." (2/7/18

Bankr. Order, DE # 7-9, at 146.)

McClain's arguments under Rules 15 and 16 of the Federal Rules of Civil Procedure are

primarily rooted in the alleged prejudice he suffered as a result of the amendments. He contends

that Mr. Parker did not raise any issue as to the Note's authenticity in his deposition; the Parkers

did not indicate that the Note was invalid in their written discovery; and Mr. Parker died before

trial, thus he (McClain) was deprived of the opportunity to examine him about the new defenses,

including the authenticity of the Note.[7] (McClain's Br., DE # 48, at 47–48.)

However, McClain admits he had the ultimate burden of proving the amount and validity

of his claim. (See McClain's Reply Br., DE # 53, at 6.) A properly executed and filed proof of

claim is prima facie evidence of the validity and amount of that claim. Fed. R. Bankr. P. 3001(f).

> The burden then shifts to the debtor to object to the claim. The debtor must
> introduce evidence to rebut the claim's presumptive validity. If the debtor carries
> its burden, the creditor has the ultimate burden of proving the amount and validity
> of the claim by a preponderance of the evidence.

Stancill v. Harford Sands, Inc. (In re Harford Sands, Inc.), 372 F.3d 637, 640 (4th Cir. 2004)

(internal citations omitted). At least twice prior to the amendments at issue here, the court

reminded McClain that the ultimate burden of proving the amount and validity of his claim

rested with him. (See 3/30/17 Bankr. Order, DE # 7-8, at 214; 5/18/17 Bankr. Order, DE # 7-8,

at 278.)

Furthermore, the record shows that prior to start of plaintiffs' case-in-chief—and more

than a year prior to the court's allowing plaintiffs' amendments—the court heard plaintiffs'

---

[7] Mr. Parker provided two brief de bene esse depositions, during one of which "McClain's counsel did not explore
issues concerning the Promissory Note beyond simply presenting a copy of it to Mr. Parker for authentication." (DE
# 48, at 47.) When asked, Mr. Parker testified "[i]t seems like I remember seeing this," and "[y]eah[,] I see my
scribble on it." (Parker Depo., DE # 7-7, at 45.) McClain's counsel chose to inquire no further.

17

request for production of the original note.  (See 2/16/16 Tr., DE # 9, at 14–27.)  At that hearing, counsel for the Parkers acknowledged Mr. Parker signed *a* note but said, "There's just a question about whether these three pages were together when he signed it."  (Id. at 19.)  Counsel for McClain and the Parkers then disputed whether the Parkers admitted the copy of the note (the "Photocopy Note") provided in discovery was in fact the Note signed by Mr. Parker.  (See id. at 19–25.)  Counsel for the Parkers argued the circumstances surrounding the attachment to the Note have been at issue, which counsel for McClain argued was "something for cross examination of Mr. McClain on the stand."  (Id. at 25.)  Counsel for the Parkers stated, "It's not just the authenticity of the signature, it's the authenticity of the attachment, which was drawn into question at the very outset in the complaint . . . ."  (Id.)  The court concluded the matter after the parties agreed McClain could not produce the original and had produced the copy he had.  (Id. at 27.)

Prior to that moment, but certainly in it, McClain knew he did not have possession of the original Note and therefore knew he would have to meet his burden of proving its amount and validity through North Carolina's lost note statute.  See N.C. Gen. Stat. § 25-3-309(a)(i).  He acknowledges three[8] of plaintiffs' "new defenses," namely, "(a) McClain has not produced an original promissory note to support the Claim and has been unable to explain loss of the Note; (b) the Note was not and could not have been signed on October 12, 2007; (c) the amount of the Note was not and could not have been calculated on October 12, 2007," "are admittedly within the scope of N.C. Gen. Stat. §§ 25-3-308 and 309, to which McClain bears the burden of proof." (McClain's Reply Br., DE # 53, at 10.)

---

[8] The other "new defenses" as described by McClain—"(d) statute of frauds; (e) lack of consideration; (f) set-off of the Claim against Parkers' claims as set out in the Complaint; and (g) invalidity of the Note due to McClain's fraud, breach of fiduciary duty, negligence, and misrepresentations as alleged in the Complaint"—are not directly at issue here.  (See DE # 53, at 10.)

18

In essence, these defenses challenge McClain's ability to prove the amount and validity of his claim—a burden he bore from the moment he filed it. McClain was not unfairly surprised by being held to this burden. Even if the Parkers had not amended their objection, they could— and did—challenge the validity or authenticity of McClain's claim at trial. See, e.g., Fed. R. Civ. P. 12(h) (allowing individuals to raise failure to state a claim through trial). (See also 11/4/19 Bankr. Order, DE # 7-8, at 313 (explaining the evidentiary quandary regarding admitting the Photocopy Note); McClain's Reply Br., DE # 53, at 17–18 (explaining that "the document produced by McClain could not have been the note signed by Mr. Parker" was argued in plaintiffs' response to McClain's motion for judgment on the pleadings).) As such, he was not unfairly prejudiced by the bankruptcy court's allowance of the amendments, and the bankruptcy court did not abuse its discretion in doing so.[9]

### 2. McClain's Failure to Prove the Note's Contents

McClain argues the bankruptcy court erroneously determined that he had not proved the contents of the Note. (McClain Br., DE # 48, at 55.) He contends he sufficiently proved the terms of this lost note by producing a photocopy, (id. at 65), and that the bankruptcy court erred by finding the Photocopy Note was not what it purported to be or an exact duplicate of the Note signed by Mr. Parker and McClain, (id. at 66). He asserts, "[a]lthough there is no evidence on the record of a Hypothetical Note whose terms differed from the Photocopy Note, the Court improperly surmised that Parker and McClain signed a note whose terms were different from the Photocopy Note." (Id.) In response, plaintiffs argue this

---

[9] Nor does the bankruptcy court's holding violate the doctrine of laches. As McClain acknowledges, "laches is usually asserted [as] an affirmative defense" that bars a claim. (McClain's Reply Br., DE # 53, at 23.) Even if the doctrine could be applied to the Parkers' challenges to McClain's ability to prove his claim, as explained here, the court finds McClain was not unfairly surprised by the amendment, and thus the amendment is not barred by the doctrine of laches.

19

confuses the burden of proof. It was McClain's burden to prove the terms of the Note. It was not the Parkers' burden to prove an alternative. The abundant inconsistencies in amount, date, and recollection as to whether there were two pages or three on the note Mr. Parker signed are more than sufficient to justify the trial court's finding that McClain did not prove the terms of the Note.

(Parkers' Reply Br., DE # 50, at 39.)

The bankruptcy court's factual findings regarding the Photocopy Note's authenticity and whether McClain proved its terms are reviewed for clear error. (See McClain's Br., DE # 48, at 66 (outlining purported errors and arguing the bankruptcy court's finding that he failed to prove the terms of the instrument was clearly erroneous).) As the bankruptcy court outlined, it hesitated to admit the Photocopy Note into evidence:

> At many points during the trial, the court and counsel engaged in colloquies regarding the promissory note upon which McClain's claim is based. Of particular concern was whether, in light of McClain's inability to produce the original promissory note, the photocopy offered by McClain could properly be admitted into evidence. Plaintiffs objected to admission of that document, arguing among other things that McClain had not established that the three-page photocopy upon which he bases his claim was a true and exact duplicate of the lost original promissory note; there is, for example, contradictory evidence as to whether the original promissory note signed by Parker had two pages, or three. Plaintiffs challenged the validity, authenticity and accuracy of the proffered duplicate note on other bases as well, but insofar as the legal standards regarding its admissibility were at issue, the question – and the quandary – presented to the court was this: Setting aside for the moment plaintiffs' various challenges to the authenticity and enforceability of that lost original promissory note, is the photocopy that McClain sought to admit into evidence a true and accurate copy of the lost original promissory note? In this evidentiary chicken-and-egg situation, the court ultimately allowed into evidence McClain's photocopy of the promissory note upon which he bases his claim. The court, at that point and at many others, made clear that it did not find that the photocopy (the "Photocopy Note") offered by McClain was, in fact, a true and accurate duplicate of the promissory note signed by Parker.

(11/4/19 Bankr. Order, DE # 7-8, at 313.)

The bankruptcy court found "[t]he date on the face of the Photocopy Note is October 12, 2007," and on page two (the signature page) the date of execution says "Executed this _____ day of _____ 2007." (Id. at 316–17.) However, McClain testified that he prepared and presented the

20

document to Mr. Parker in October of 2008.  (See id.  see also McClain's Br., DE # 48, at 58 (acknowledging this fact).)  The third page of the Photocopy Note is dated 22 October 2008 and uses a higher appraised value for the relevant tract, resulting in an amount payable of $1,461,629.00, rather than the $1,227,879.00 calculated in earlier invoices.  (11/4/19 Bankr. Order, DE # 7-8, at 317.)  Two of the Parkers' personal financial statements prior to October of 2008 (15 June 2008 and 30 September 2008) disclosed an obligation to McClain.  (See id. at 320.)  The court found there was no evidence to explain how or why a personal obligation owing from Mr. Parker to McClain is included on these earlier financial statements.  (Id.)  McClain agreed, stating, "[He had no idea where these numbers came from," (McClain's Br., DE # 48, at 75).  The bankruptcy court deemed this "material, because prior to Parker's execution of a promissory note, the undisputed evidence is that he had no personal obligation to McClain." (11/4/19 Bankr. Order, DE # 7-8, at 320.)  The bankruptcy court also found there was contradictory evidence regarding whether the note signed by Mr. Parker had two pages or three. (See 11/4/19 Bankr. Order, DE # 7-8, at 313, 318 (recalling Mrs. Parker's testimony that the note was two pages), 319 (recalling Ms. Evans' testimony that she did not recall seeing a third page with the note); McClain's Br., DE # 48, at 70 (acknowledging that Mrs. Parker testified the document she copied on the day it was signed was two pages).)

The bankruptcy court concluded:

> In this matter, questions abound as to the terms of the instrument, and McClain has failed to prove its terms by a preponderance of the evidence. Indeed, McClain did not even come close. McClain's testimony that he prepared the promissory note and presented it to Parker in 2008 simply does not sync with the evidence before the court, which includes but is not limited to financial statements reflecting the personal obligation from Parker to McClain prior to the time any such obligation purportedly existed. The Photocopy Note itself is riddled with internal inconsistencies, such as a reference to an attached "payment breakdown schedule" which is not attached, and interest calculations that cannot be recreated based on the terms of the document. As the court made clear during the trial: At issue was

21

whether the Photocopy Note was even what it purported to be – let alone whether it was an exact duplicate of the promissory note executed by Parker and McClain. The court cannot conclude that the Photocopy Note is either of those things.

(11/4/19 Bankr. Order, DE # 7-8, at 328.)

McClain does not dispute these inconsistencies described by the bankruptcy court, and in fact, he acknowledges "the Note contains inconsistent payment terms and refers to a 'payment breakdown schedule' that was not attached to the Note," but contends this was "not material to the determination of Mr. Parker's liability under the Note." (McClain's Br., DE # 48, at 71.) He also alleges "the course of conduct between the parties should put to rest any notion that the terms [] contained in the photocopy are not the same as the original promissory note." (Id. at 78.)

To the contrary, under North Carolina law, a person not in possession of an original debt instrument may enforce the instrument only if they meet the requirements of N.C. Gen. Stat. § 25-3-309(a) and (b).[10] Under section (b), the individual "must prove the terms of the instrument and the person's right to enforce the instrument." N.C. Gen. Stat. § 25-3-309(b); see also In re Carter, No. COA08-1503, 2009 N.C. App. LEXIS 1259, at *7 (N.C. Ct. App. Aug. 4, 2009) (affirming the trial court's "finding that the terms of the purported promissory note were uncertain and, thus, [the individual] had failed to meet § 25-3-309(b)'s requirement"). Based on a thorough review of the record, this court agrees with the bankruptcy court—and the parties— that there are inconsistencies between the evidence presented and the terms of the Photocopy

---

[10] The bankruptcy court also concluded McClain could not satisfy section (a) because he failed to prove he was in possession of the original note when it was lost. (11/4/19 Bankr. Order, DE # 7-8, at 327.) McClain appealed this finding. However, because the court concludes McClain failed to prove the terms of the note, it does not reach this issue.

Note.  The bankruptcy court did not clearly err in concluding McClain had failed to prove the terms of the instrument.

### III. CONCLUSION

For the foregoing reasons, the bankruptcy court's orders are AFFIRMED.

This 30 March 2022.

W. Earl Britt
Senior U.S. District Judge